SUSAN M. CHEHARDY, Chief Judge.
UPlaintiff, Safeway Insurance Company of Louisiana, appeals from the 24th Judicial District Court’s judgment of August 6, 2015, in which the court denied Safeway’s petition for a declaratory judgment and held Safeway liable to Progressive Security Company. For the reasons that follow, we reverse the judgment of. the district court.
FACTS AND PROCEDURAL HISTORY
Around 5:00 p.m. on March 31, 2010, Exavier Gardner was driving a 1996 white Mercury Grand Marquis borrowed with permission from its owner Brittany Husky.. Mr. Gardner was the sole occupant of the vehicle, had recently consumed several intoxicants,[1] was in possession of cocaine, and was navigating rush-hour traffic on Manhattan Boulevard in Jefferson Parish when he observed a police vehicle behind him.
| ¡¡Detectives Whalend Shepherd and Richard. Dykes of the Jefferson Parish Sheriffs Office were on patrol when they were alerted to a .possible carjacking of a white Mercury Grand Marquis. They observed Mr. Gardner in the vehicle fitting this description and began following him. During the next several minutes, the police observed Mr. Gardner commit several traffic violations, prompting them “to go ahead and stop the vehicle related to [these] violations ... and to partially eliminate the vehicle as being the carjacking vehicle.” The police activated their lights and sirens, but Mr. Gardner refused to stop. Mr. Gardner admitted that he wanted to avoid capture because he was in possession of cocaine. He accelerated and changed lanes, trying to evade the police through congested traffic until he came to the intersection at Lapalco Boulevard, where both lanes of traffic were backed up at the red light. Still determined to escape, Mr. Gardner positioned his vehicle on the line dividing the two lanes and forced his way through the traffic, colliding with at least six vehicles and forcing others off the road. His damaged vehicle finally came to rest on the side of the road, where Mr. Gardner fled on foot and was apprehended nearby. Mr. Gardner was cited with several traffic violations and was later charged with, to which he ultimately pled guilty, battery of a police officer and possession of cocaine.[2]
As a result of this incident, individuals who had been struck by Mr. Gardner filed claims for property damages and/or bodily injuries against Safeway, the liability insurer for the vehicle owned by Brittany Husky and operated by Mr. Gardner. Safeway denied coverage on the basis that the policy excluded coverage for damages caused by intentional and criminal acts. On July 26, 2010, Safeway filed a petition seeking a declaratory judgment to this effect.
| .[Progressive Security Insurance Company, an insurer of one of the victims, filed a reconventional demand against' Safeway asserting a subrogation claim and seeking reimbursement for payment made to its insured as á result of the damages caused by Mr. Gardner.[3]
Following trial, the district court rendered judgment on August 6, 2015. The court denied Safeway’s request for declar *687 atory relief and granted relief on Progressive’s reconventional demand, holding Safeway liable to Progressive. In its reasons for judgment, the court explained that Safeway did not meet its burden of proving that coverage for the damage caused by the accident was excluded under the policy. Safeway sought and was granted a suspensive-appeal from-this ruling.
DISCUSSION
At issue in this' appeal’is the interpretation of an insurance policy. As a matter of contract interpretation, this is a question of law. See Gorman v. City of Opelousas, 13-1734 (La.07/01/14), 148 So.3d 888, 892; Cutsinger v. Redfern, 08-2607 (La.05/22/09), 12 So.3d 945, 949. As such, it may be resolved by means of a declaratory judgment. See Mapp Constr., LLC v. Amerisure Mut. Ins. Co., 13-1074 (La.App. 1 Cir. 03/24/14), 143 So.3d 520, 528 (“The function of the declaratory judgment is simply to establish the rights of the parties or express the opinion of the court on a question of law without ordering anything to be done.”); Poynter v. Fidelity & Casualty Co., 140 So.2d 42, 46-47 (La.App. 3 Cir.1962) (finding a declaratory judgment was appropriate to determine whether an insurance policy required the liability insurer' to defend a suit filed against the insured). On review,'we consider a district court’s ruling on a declaratory judgment under the abuse of discretion standard. Connick v. Shepherd, 15-582 (La.App. 5 Cir. 09/24/15),176 So.3d 1129, 1132, writ denied, 15-1763 (La.9/30/15), 178 So.3d 575.
Because an insurance policy is a contract between the parties, it is construed with the general rules of contract interpretation. Louisiana Ins. Guar. Ass’n v. Interstate Fire & Casualty Co., 93-0911 (La.1/14/94), 630 So.2d 759, 763. The interpretation of a contract is the determination of the common intent of the parties. La. C.C. art. 2045. Such intent is to be determined in accordance with the general, ordinary, -plain, and popular meaning of the words used in the policy, unless the words -have acquired a techhical meaning. Id.-, see also La. C.C. art. 2047 (“The words of a contract must be given their generally prevailing meaning.”). An insurance policy should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion. Louisiana Iris. Guar. Ass’n, supra. Insurers, like any other Contracting party, are entitled tó contractually limit coverage in any manñér they desire, so long as the limitations do not conflict with statutory provisions or public policy. See Edwards v. . Daugherty, 03-2103 (La.10/01/04), 883 So.2d 932, 947; Louisiana Ins. Guar. Ass'n, supra at 763.
We begin our analysis with the insurance policy itself. At issue here are the exclusions of coverage “to bodily injury or property damage caused intentionally by or- at the direction of the insured”[4] and “to any automobile while being operated or used in the commission of a crime, other than a traffic violation.” The latter exclusion is where we focus our attention.
Inin our viéw, “crime,” the key term in this exclusion; has a generally prevailing meaning that does not warrant a searching interpretive- inquiry. But cf. Young v. Brown, 27,018 (La.App. 2 Cir. 6/21/95), 658 So.2d 750, writ denied, 95-1811 *688 (La.10/27/95), 662 So.2d 1 (seeking to determine whether the term “criminal acts” in an insurance poljcy exclusion included acts of criminal negligence). This prevailing meaning is reflected in consistent definitions of the term from several sources. According to legal lexicographers, “crime” refers to “[a]n act that the law makes punishable[.]” Black’s Law Dictionary 427 (9th ed. 2009). According to the Louisiana Supreme Court, it is “conduct legislatively defined as criminal.” State v. Ritchie, 590 So.2d 1139, 1148 (La.1991). And according to the Louisiana legislature, it is “conduct which is defined as criminal in this Code, or in other acts of the legislature, or in the constitution of this state.” La. R.S. 14:7. From these definitions, we conclude that conduct made punishable under Title 14 of the Louisiana Revised Statutes is a “crime” for purposes of this exclusion.[5] Additionally, as the following demonstrates, we find this exclusion does not violate public policy.
The Louisiana legislature has directly commented oh the public policy considerations of liability insurance, stating the purpose of such insurance is “to give protection and coverage to all insureds” and is intended “for the benefit of. .all injured persons.” La. R.S. 22:1269(D). This general purpose..is advanced in the specific context of motor vehicles by means of the Louisiana Motor Vehicle Safety Responsibility Law, La. R.S. 32:851-32:1043, which seeks to “eliminat[e] ... the reckless and irresponsible driver from the highways by requiring that owners and drivers of motor vehicles provide proof of financial responsibility!!,]” e.g., 17compuIsory automobile liability insurance. Marcus v. Hanover Ins. Co., 98-2040 (La.06/04/99), 740 So.2d 603, 606.
 Although coverage exclusions generally do not comport with the policy of granting protection for injured persons, the exclusions here serve a separate public policy interest of prohibiting persons from insuring themselves against their own intentional or criminal acts.. Withholding insurance coverage for intentional or criminal acts helps to disincentivize such conduct, which in turn serves the purpose of eliminating reckless and irresponsible drivers from the highways. See Breland v. Schilling, 550 So.2d 609, 610 (La.1989) (“The exclusion is designed to prevent an insured from acting wrongfully with the security of knowing that his insurance company will pay the piper for the damages.”); Goldsmith v. Green, 45,-532 (La.App. 2 Cir. 9/01/10), 47 So.3d 637, 641 (recognizing the strong public policy of preventing wrongdoers from indemnifying themselves against their own intentional criminal acts); Young, supra at 753 (“The purpose of the exclusion is a recognition of a long-standing public policy against insuring illegal activities and thus, promoting their commission.”). For these reasons, we find the crime exclusion does not violate public policy.
 We now consider whether Mr. Gardner’s conduct that caused the damages was a “crime” for purposes of this exclusion. Safeway had the burden of proving it was. See Mateu v. State Farm Mut. Auto. Ins. Co., 08-1208 (La.App. 5 Cir. 4/28/09), 13 So.3d 196, 198. The district court found Safeway did not bear this burden, reasoning.as follows:
... [T]he pursuit which led to the chase and subsequent accident was due to observing multiple traffic violations.... [initially the officers only followed the *689 vehicle in question under suspicion of carjacking but they did not activate the emergency light, not give chase; however, after observing multiple traffic violations, the officers activated their sirens and attempted to pull the vehicle over. 1 «Consequently, the vehicle was used for the commission of traffic violations which are not valid exclusions from policy coverage.
The court’s reasoning neglects to address the salient fact here: the cause of the damages. It is clear from the record that the damages were caused by Mr. Gardner’s flight from the police, not traffic violations. Mr. Gardner admitted that he saw blue and red lights, but did not stop because he “was trying to get away” and “was trying to get rid of what [he] had on [him], drugs.” He attempted to make his escape by forcing his way through congested rush-hour traffic, colliding with at least six vehicles and forcing others off the road.
We have little difficulty concluding that this was a crime. La. R.S. 14:108,1, captioned “Flight from an officer; aggravated flight from an officer,” provides in pertinent part:
A. No driver of a motor vehicle or operator of a watercraft shall intentionally refuse to bring a vehicle or watercraft to a stop knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believé that the driver has committed an Offense..
* * *
C. Aggravated flight from an officer is the intentional refusal of a driver ,.to bring a vehicle to.a stop or of an operator to bring a watercraft to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense.
-D. Circumstances wherein human life is endangered., shall be any situation where the .operator of the fleeing vehicle or watercraft commits at least two of the following acts: .(1) Leaves the roadway or- forces another vehicle to leave the roadway[;] (2) Collides with another ve- , hide or watercraft.
Because the damages were caused by Mr. Gardner’s operation of an automobile in the commission of a crime, coverage under Safeway’s liability policy is excluded. See Trumps v. USAgencies Cas. Ins. Co., 14-25 (La.App. 3 Cir. 05/07/14), 139 So.3d 643 (upholding trial court’s determination that a person’s flight in a vehicle from law enforcement was a “crime” for purposes of insurance policy exclusion). We therefore conclude that the district court abused its discretion in denying Safeway’s petition for declaratory judgment and erred in holding Safeway liable to Progressive.
DECREE
For the foregoing reasons, the district court’s judgment of August 6, 2015 is reversed.

REVERSED

.Mr. Gardner explained in a deposition that about one hour before driving the vehicle that day, he consumed two pills of Ecstasy and a half pint of hard liquor. He also admitted to smoking marijuana while operating the vehicle.

. 24th Judicial District Court Case No. 10-2314.

. Progressive also filed cross-claims against Mr. Gardner and Ms. Husky, neither of which is at issue in this appeal.

. As provided in the policy, “insured” includes the named insured and "any Other person using [the owned] automobile’- to whom the named insured has given the expressed or implied permission, provided the use is within the scope of such permission.” Accordingly, Mr. Gardner is an "insured” for purposes of this' exclusion.

. By this finding, we do' not hold that "crimes” are exclusivelyfioc.ated in Title 14 of the Louisiana Revised Statutes. For example, the crime of negligent homicide by operation of a watercraft is located in La. R.S. 34:851.6.